IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**HAND CUT STEAKS, INC. et al.**                                                      **PLAINTIFFS**

v.                      **CASE NO. 4:16-CV-00531 BSM**

**SOUTHERN INSURANCE COMPANY**                                 **DEFENDANT**

## ORDER

Defendant Southern Insurance Company's ("Southern") motion for summary judgment [Doc. No. 29] is denied.

## I. BACKGROUND

This case arises from a dispute over the proper sum owed under an insurance policy. Plaintiffs Hand Cut Steaks, Inc.; Hand Cut Steaks of Jonesboro, Inc.; and Property Ventures, LLC were the owners and operators of a Colton's Steakhouse in Jonesboro, Arkansas, which burned down on December 17, 2014. Resp. Pl.'s Statement Undisputed Facts ("Pl.'s Facts") ¶ 1, Doc. No. 37; Resp. Def.'s Statement Undisputed Facts ("Def.'s Facts") ¶ 2, Doc. No. 32. This property was one of multiple properties insured by Southern under blanket insurance policy CMP 5516015, effective April 1, 2014, through April 1, 2015. Def.'s Facts ¶¶ 2–4. The blanket policy covered real property at nine locations and personal property at twelve locations. *Id.* ¶ 4. The Colton's Steakhouse was designated "premises number 002" in the policy's "description of premises." Doc. No. 26-2, at 13. The fire totally destroyed premises number 002. Pl.'s Facts ¶ 2. It is undisputed that premises number 002 was the only property that was destroyed of the multiple properties covered under the blanket policy.

Def.'s Facts ¶¶ 4, 8.

The insurance policy provided $8,437,025 in blanket building coverage and $4,715,000 in blanket personal property coverage. *Id.* ¶ 5. The parties agree that the blanket policy provided replacement cost coverage, Pl.'s Facts ¶ 6, and that the policy required the insured to maintain a coinsurance percentage of 100%. Def.'s Facts ¶ 9. The replacement cost of the building, to date, totals $1,618,142.79, and the replacement cost of the personal property contained in the building, to date, totals $503,819.72. Pl.'s Facts ¶¶ 9, 12; Doc. No. 27, at 2. Southern has paid plaintiffs $909,135.87 toward building replacement cost and $433,199.20 towards personal property replacement cost. Def.'s Facts ¶¶ 13, 17. Southern asserts that a coinsurance percentage has been applied properly and it has paid the full amount properly owed under the policy for building and personal property replacement cost. Plaintiffs respond they are entitled to the full replacement cost for the building and personal property as long as those costs do not exceed the maximum limits identified in the policy for each category respectively.

The policy also provided $3,925,000 in blanket lost income coverage. Pl.'s Facts ¶¶ 15, 16. Southern has paid $835,785 towards lost income. Def.'s Facts ¶ 18. Southern claims it has paid plaintiffs the full amount to which they are entitled because they failed to rebuild premises 002 within a "reasonable" time as required by the policy's language. Doc. No. 30, at 9–10; Doc. No. 29-1, at 106 (policy language defining "Period of restoration"). Plaintiffs respond by arguing that the policy did not limit the time allowed to rebuild, that the time to rebuild was reasonable, and that they are entitled to recover all of their lost income

totaling $1,071,742.40. Pl.'s Facts ¶ 17.

Plaintiffs seek damages for breach of contract on their claims for the replacement cost of the building and personal property and for lost income; a statutory penalty equal to 12% of the judgment, pre- and post-judgment interest, and attorney's fees pursuant to Arkansas Code Annotated section 23-79-208; and punitive damages for bad faith conduct. Am. Compl. ¶¶ 14–18, Doc. No. 19. Southern moves for summary judgment as to all of plaintiffs' claims. Doc. No. 29, at 3.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring trial. *Id.* Importantly, when considering a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

A. Coinsurance

The parties dispute whether a coinsurance percentage applies to reduce the amount the insured can recover under the policy. Coinsurance is a method used to divide the risk of loss between the insurer and the insured. *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511, 516 (8th Cir. 2009). Generally, coinsurance provisions require the insured to maintain insurance on covered property in an amount at least equal to a specified percentage, and failure to do so results in the insured assuming the status of a coinsurer who will bear a proportionate amount of the loss. *Wetmore v. Unigard Ins. Co.*, 107 P.3d 123, 125 (Wash. App. 2005). The purpose of coinsurance is to reward those who insure at close to full value and to penalize those who insure at less than full value. *Id.*

Southern asserts that a coinsurance penalty was properly applied to reduce plaintiffs' claim for building and personal property replacement cost pursuant to the policy's plain and unambiguous language. If an insurance policy's language is unambiguous, the plain language controls. *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697–98 (8th Cir. 2013). The plain language of blanket policy CMP 5516015 states, "If a coinsurance percentage is shown in the Declarations, the following condition applies." Doc. 29-1, at 94 (Building and Personal Property Coverage Form, Section F: Additional Conditions). The declarations page demonstrates that a 100% coinsurance percentage is shown for the building and personal property at premises 002, thus satisfying this condition. Doc. No. 29-2, at 1–4.

Next, condition "a" provides, "We will not pay the full amount of any loss if the

value of Covered Property at the time of the loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property." Doc. No. 29-1, at 94. The parties agree that the coinsurance percentage shown in the declarations is 100%. Doc. No. 34, at 6; Doc. No. 30, at 5. The parties agree that the value of the covered property is equal to its replacement cost. Doc. No. 30, at 8 (citing to the policy's language, which states, "Replacement Cost . . . replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form."); Doc. No. 34, at 6 ("In light of the optional 'replacement cost' coverage, the value of the covered property is equal to the actual replacement cost . . . ."). And, the parties agree that the limit of insurance set out in the policy was $8,437,025 for the building and $4,715,000 for the personal property respectively. Pl.'s Facts ¶¶ 5, 7; Def.'s Facts ¶ 5. Multiplying "the value of Covered Property at the time of the loss [$1,618,142.79 for the building or $503,819.72 for personal property] times the Coinsurance percentage shown for it in the Declarations [100% or 1.00]," does not yield an amount "greater than the Limit of Insurance for the property," which is $8,437,025 or $4,715,000 respectively. Therefore, condition "a" does not apply under the policy's plain language, despite Southern's assertions to the contrary.

Condition "b," however, does apply under the policy's plain language. It states, "If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies." Doc. No. 29-1, at 95. This condition is satisfied because the policy provided one limit of insurance for the buildings insured under the policy and one limit for the personal property insured under the policy respectively. Doc.

No. 29-2 at 4 (listing $8,437,025 as the "Limit of Insurance" for blanket building coverage and $4,715,000 as the "Limit of Insurance" for blanket personal property coverage); Pl.'s Facts ¶¶ 4, 5, 7; Def.'s Facts ¶ 5. Condition "b" then provides an example of the four steps used to calculate "the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty" and to calculate the coinsurance penalty. Doc. No. 29-1, at 95. The example shown requires the value of other properties insured under the policy and potentially other facts that have not been provided. *See id.*

To summarize, the policy's language, the law, and the parties all agree that a coinsurance penalty applies if premises 002 was underinsured. *See Boardwalk Apartments, L.C.*, 572 F.3d at 517 (stating in the context of identical coinsurance language that "if the property was underinsured, the coinsurance provision applies"); Def.'s Facts ¶ 9 (plaintiffs admit that the "policy requires coinsurance of 100% for real and personal property."). Thus, the issue is whether plaintiffs were underinsured. Southern asserts the coinsurance penalty applies because plaintiffs were underinsured, but its explanation for what amount of insurance would have been adequate or for how it calculated its coinsurance penalty is unclear. In any case, Southern's calculus involves square footage values of "all of the real property insured under the blanket limits." Def.'s Facts ¶¶ 10–11, 15. Again, those facts have not been provided. Furthermore, plaintiffs dispute that this is the correct square foot value and that this calculation results in the correct coinsurance percentage to be applied. *Id.* ¶¶ 11, 12, 14, 15, 16. Therefore, whether plaintiffs were indeed underinsured is a question for the jury. Moreover, the calculation of the coinsurance penalty, if any, will require factual

determinations by a jury.

B. Lost Income

Southern claims it has paid plaintiffs the full amount to which they are entitled because they failed to rebuild premises 002 within a "reasonable" time as required by the policy's language. Plaintiffs respond that the policy did not limit the time allowed to rebuild, that the time to rebuild was reasonable, and that they are entitled to recover all of their lost income totaling $1,071,742.40. The policy provides lost income coverage for losses sustained due to the necessary suspension of operations during a "period of restoration." Doc. No. 29-1, at 98. The policy defines "Period of restoration" as ending on the earlier of two dates: One of those dates is the actual date when business is resumed, and the other is the date "when the property at the described premises should be repaired, rebuilt or replaced with *reasonable* speed and similar quality." *Id.* at 106 (emphasis added).

Thus, plaintiffs' assertion that the policy does not include a time limitation is incorrect. The policy's language plainly requires a reasonable rebuild time. The document plaintiffs provide to evidence their assertion, Exhibit A, is labeled as a "Large Loss Report." Doc. No. 33-1. It is a document generated by an unknown person and states:

> The construction has taken longer than expected. *The policy does not limit time. The Period of Restoration will end when the building can be occupied and operations commenced.* It is expected that this will be late Feb 2016. The requested reserve revision is based on average monthly BI loss projected through February 2016.

*Id.* (emphasis added). Although this statement may be evidence supporting the claim that the rebuild time was reasonable, it is not enough to overcome the policy's language requiring a

7

reasonable rebuild time. Premises 002 burned in December of 2014, and the restaurant was reopened in April of 2016, approximately sixteen months later. Doc. No. 30, at 11. Plaintiffs say delays were caused by Southern's failure to issue insurance payments timely and by uncontrollable weather conditions, and Southern says the rebuild time was unreasonable. Whether the rebuild time was reasonable is an issue of fact for the jury to resolve.

    C.    <u>Punitive Damages</u>

Southern asserts plaintiffs can provide no evidence of dishonest, malicious, or oppressive conduct necessary to find bad faith by Southern. *See Switzer v. Shelter Mut. Ins. Co.*, 208 S.W.3d 792, 801 (Ark. 2005). Plaintiffs, however, have submitted evidence of internal communications demonstrating that Southern may have known plaintiffs were adequately insured and that a coinsurance penalty should not have been applied. This document, Exhibit F, is labeled as a "Referral Full Form" and makes the following statement regarding premises 002:

> They have blanket building coverage on the building and have several of their buildings insured for the same amount. *This is resulting in 6 of the locations to be over insured. The rest are ok.* They do have spoilage on each restaurant with a $20,000 limit. They do not have ALS, but do have blanket business income coverage including rental value with a total limit of $3,925,000.

Doc. No. 26-7, at 3 (emphasis added); Doc. No. 34, at 7. This is sufficient to create a dispute of material fact as to whether Southern has acted in bad faith. Therefore, this is an issue for the jury to resolve.

8

## IV. CONCLUSION

For these reasons, Southern's motion for summary judgment [Doc. No. 29] is denied in its entirety.

IT IS SO ORDERED this 13th day of November 2017.

_____
UNITED STATES DISTRICT JUDGE